24 F.3d 247
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Richard L. LOCKEN, Plaintiff-Appellant,
v.
Charles E. ROBBINS, et al., Defendants-Appellees.
 No. 93-35450.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 11, 1994.*
Decided May 18, 1994.
 
 Before: HUG, D.W. NELSON, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Richard L. Locken, a federal prisoner, appeals pro se the district court's order granting the defendants' motion for summary judgment in his 42 U.S.C. Sec. 1983 action. We affirm.
 
 Jurisdiction
 
 3
 Prior to reaching the merits of this appeal, we must determine whether we have jurisdiction. Defendants contend that we lack jurisdiction to consider this appeal because Locken filed a notice of appeal before the district court resolved Locken's Fed.R.Civ.P. 59(e) motion for reconsideration. This contention lacks merit.
 
 
 4
 A notice of appeal must be filed within thirty days of the date of entry of the judgment or order appealed from. Fed.R.App.P. 4(a)(1). "A motion for reconsideration of summary judgment is appropriately brought under either Federal Rule 59(e) or Federal Rule 60(b)." Taylor v. Knapp, 871 F.2d 803, 805 (9th Cir.), cert. denied, 493 U.S. 868 (1989). A Rule 59(e) motion must be served within ten days after the entry of judgment, whereas a Rule 60(b) motion need only be filed within a reasonable time. Fed.R.Civ.P. 59(e) and Fed.R.Civ.P. 60(b). Unlike a Rule 59(e) motion, a Rule 60(b) motion, which is served more than ten days after the entry of judgment, does not affect the validity of a previously filed notice of appeal. Fed.R.App.P. 4(a)(4); Yniques v. Cabral, 985 F.2d 1031, 1033 (9th Cir.1993); United States v. 1982 Sanger 24' Spectra Boat, 738 F.2d 1043, 1045 (9th Cir.1984).
 
 
 5
 Here, the district court entered final judgment in this action on April 21, 1993. On May 3, 1993, Locken filed his notice of appeal. On May 14, 1993, Locken filed a motion for reconsideration. On June 10, 1993, the district court denied Locken's motion for reconsideration. Neither Locken nor the district court referred to a specific federal rule in connection with the motion for reconsideration.
 
 
 6
 Locken filed a timely notice of appeal because he filed his notice within thirty days of the entry of judgment. See Fed.R.App.P. 4(a)(1). We construe Locken's motion for reconsideration as a Rule 60(b) motion since he filed his motion more than ten days after the entry of judgment. See Taylor, 871 F.2d at 805. Accordingly, we have jurisdiction under 28 U.S.C. Sec. 1291 to consider Locken's appeal, because the filing of a Rule 60(b) motion does not affect the validity of a previously filed notice of appeal. See Fed.R.App.P. 4(a)(4); 1982 Sanger 24' Spectra Boat, 738 F.2d at 1045.[1]
 
 Background
 
 7
 On April 19, 1988, during his arrest for various narcotics offenses, Locken suffered gunshot wounds resulting in the destruction of the lower left half of his chest, massive injury to his left lung, and multiple wounds to his body. Locken also experienced multiple third degree burns. Police officers transferred Locken to the Good Samaritan Hospital where he received medical treatment for his nearly fatal injuries from several physicians, including Dr. Ramesh Sharma. Locken underwent several surgical procedures, including the removal of his left lung. Following surgery, Locken developed an infection in his chest cavity when fluid started leaking out of a post-operative wound. Dr. Sharma performed further surgery to insert chest tubes to drain the fluid. However, these chest tubes did not drain the fluid effectively and were removed on May 25, 1988. In his May 26, 1988 report, Dr. Sharma noted that the "ultimate disposition of this wound is yet to be decided."
 
 
 8
 On May 31, 1988, Locken was discharged from the hospital and transferred to the Pierce County Jail. Locken contends that the medical care he received at the jail between May 31, 1988 and September 7, 1988 was so inadequate that it violated his constitutional rights. Specifically, Locken contends that the defendants failed to follow Dr. Sharma's discharge orders, failed to change the dressing on his wound, housed him in a filthy cell, and refused to provide access to medical staff. As a result of the alleged inadequate medical care, Locken contends that his infection grew. On September 7, 1988, Locken returned to the hospital for further surgery because of the infection in his chest cavity. In order to cut a large opening for drainage of the infected area, Dr. Sharma removed several ribs and back muscles. As a result, Locken now suffers from chronic pain, infections, scoliosis of the spine, disfigurement, and an open chest cavity.
 
 
 9
 On July 3, 1991, Locken filed his complaint, in which he named the following defendants, all of whom were employed by Pierce County: Charles Robbins, sheriff; Carol Clark, jail administrator; Dr. Charles Weatherby, jail physician; Ronald Maassen, lieutenant; Gary Smith, captain; Vincent Tenorio, jail manager; and Robert Moorehouse, physician assistant.[2]
 
 Summary Judgment
 
 10
 Locken contends that the district court erred in granting summary judgment for the defendants because he has provided evidence of the defendants' deliberate indifference to his serious medical needs. This contention lacks merit.
 
 
 11
 We review a grant of summary judgment de novo. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992). The plain language of Fed.R.Civ.P. 56(c) mandates that the moving party is entitled to judgment as a matter of law when the nonmoving party has failed to make a sufficient showing on an essential element of the case with respect to which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). There is no genuine issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The responding party "may not rest upon the mere allegations or denials of [his] pleading, but ... by affidavits ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989) (citation omitted); see Conner v. Sakai, 15 F.3d 1463, 1467 (9th Cir.1994).
 
 
 12
 In order to prevail on a medical claim in a Sec. 1983 action, the plaintiff must prove that: (1) the specific defendant, in acting or failing to act, was deliberately indifferent to the plaintiff's serious medical needs and (2) this indifference was the actual and proximate cause of the constitutional deprivation. McGuckin, 974 F.2d at 1059 (appropriate inquiry when inmate alleges prison officials failed to attend to serious medical needs is whether officials exhibited deliberate indifference);[3] Leer v. Murphy, 844 F.2d 628, 634 (9th Cir.1988). In order to defeat summary judgment, a plaintiff must set forth specific facts as to each individual defendant's deliberate indifference. Leer, 844 F.2d at 634. It is unnecessary, however, to analyze whether the individual defendants were deliberately indifferent to the plaintiff's constitutional rights, if the plaintiff fails to demonstrate that any particular defendant was the actual and proximate cause of the constitutional violation. Id.; see Conner, 15 F.3d at 1469 (summary judgment appropriate where plaintiff failed to connect defendants with constitutional violation).
 
 
 13
 Here, Locken contends that the defendants were deliberately indifferent to his serious medical needs during the period between his discharge from the hospital and his transfer back to the hospital for further surgery (May 31, 1988 to September 7, 1988). Specifically, Locken contends that the defendants provided inadequate medical care, which caused further infection to his chest cavity and the need for additional surgery.
 
 
 14
 Locken has failed to provide any facts to support his claim that the medical treatment he received at Pierce County Jail caused the infection or the need for surgery. See Conner, 15 F.3d at 1467; Leer, 844 F.2d at 633-34. The defendants have submitted the medical reports and deposition testimony of Dr. Sharma and Dr. Anderson. Dr. Sharma's May 26, 1988 report shows that Locken had a chest cavity infection before he ever arrived at the Pierce County Jail. At the time of discharge, Dr. Sharma indicated the problems with Locken's chest cavity and noted that a massive infection might develop and further surgery could be necessary. Dr. Sharma also testified at his deposition that infection following the removal of a lung is "not unanticipated." Furthermore, Dr. Sharma stated that the infection was probably caused by a hole which was too small for drainage, and that the medical care Locken received at the jail did not cause the need for further surgery. Moreover, Dr. Sharma indicated that even with the best medical care, Locken would have needed the third operation to drain his infection.
 
 
 15
 In addition, Dr. Sharma referred Locken to Dr. Anderson for a second opinion in August 1988. Dr. Anderson concurred with Dr. Sharma's opinion that the probable cause of the infection was inadequate drainage caused by too small a hole in Locken's chest cavity. Dr. Anderson also noted that infection can occur even with good medical care. Dr. Anderson stated that he would expect an even more serious infection than the one Locken had, if Locken had been exposed to filthy conditions.
 
 
 16
 Locken has failed to provide any medical evidence to refute Dr. Sharma's or Dr. Anderson's opinions. See Celotex, 477 U.S. at 323. Although Locken has produced evidence, which if true, demonstrates that the medical care Locken received was less than ideal, mere differences of opinion between an inmate and jail physicians is insufficient to establish deliberate indifference. See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989). Thus, it is unclear whether Locken has even shown that a constitutional violation occurred. See McGuckin, 974 F.2d at 1059.
 
 
 17
 Moreover, Locken has not shown that any action or inaction by the defendants caused his further infection. See Leer, 844 F.2d at 633-34. We need not address Locken's contentions against the individual defendants, since Locken has failed to proximately connect any of the defendants with the alleged constitutional deprivation. See Conner, 15 F.3d at 1469. Accordingly, the district court properly granted summary judgment for the defendants because Locken has failed to raise a material issue of fact concerning the requisite causal connection between the individual defendants' actions and any constitutional violation. See Conner, 15 F.3d at 1469; Leer, 844 F.2d at 634.
 
 Discovery
 
 18
 Locken contends that the district court erred in granting summary judgment for the defendants without ruling on Locken's outstanding discovery requests. This contention lacks merit.
 
 
 19
 We review for abuse of discretion a district court's decision not to permit further discovery under Fed.R.Civ.P. 56(f) (court may continue motion for summary judgment to allow additional discovery by party opposing summary judgment). Liberty Lake Inv., Inc. v. Magnuson, 12 F.3d 155, 160 (9th Cir.1993). The district court abuses its discretion if the movant diligently pursued his previous discovery opportunities, and if the movant can show how allowing additional discovery would have precluded summary judgment. California Union Ins. v. American Diversified Savings Bank, 914 F.2d 1271, 1278 (9th Cir.1990), cert. denied, 489 U.S. 1088 (1991). The district court's decision on the Rule 56(f) request need not be explicitly stated. See Columbia Pictures Indus., Inc. v. Professional Real Estate Investors, Inc., 944 F.2d 1525, 1532-33 (9th Cir.1991), aff'd, 113 S.Ct. 1920 (1993).
 
 
 20
 Here, Locken argues that the district court failed to address his motion for complete copies of the depositions of Dr. Sharma and Dr. Anderson. Locken also appears to contend that the district court should have allowed Locken to depose these two witnesses after the court appointed counsel to represent Locken.
 
 
 21
 Locken has failed to show either that he diligently pursued his previous discovery opportunities or that any additional discovery would have precluded summary judgment. See California Union Ins., 914 F.2d at 1278. First, Locken neither filed a motion to compel copies of the depositions nor attempted to redepose Dr. Sharma or Dr. Anderson, even though the district court appointed counsel to represent Locken and extended the discovery deadline. Thus, Locken has failed to show that he diligently pursued his previous discovery opportunities. See id.
 
 
 22
 Second, Locken has not shown that additional discovery would have precluded summary judgment. See id. Not only did Locken fail to redepose either witness, but Locken relied on the deposition testimony of both Dr. Sharma and Dr. Anderson in opposing the defendants' summary judgment motions at oral argument. Furthermore, Locken's attorney indicated that Locken had obtained a complete copy of Dr. Sharma's deposition and that counsel spoke to Dr. Anderson on the telephone. Locken has failed to demonstrate how any "additional" discovery from either Dr. Sharma or Dr. Anderson would have precluded summary judgment. See id. Accordingly, the district court did not abuse its discretion in denying Locken's requests for additional discovery, before granting summary judgment for the defendants. See Liberty Lake Inv., Inc., 12 F.3d at 160.
 
 Leave to Amend
 
 23
 Locken contends that the district court erred in denying him leave to amend his complaint to add Dr. Sharma as a defendant. This contention lacks merit.
 
 
 24
 We review the denial of leave to amend after a responsive pleading has been filed for abuse of discretion. Texaco, Inc. v. Ponsoldt, 939 F.2d 794, 798 (9th Cir.1991). Federal Rule of Civil Procedure 15(a) provides that leave shall be freely given when justice so requires. "Whether leave to amend should be granted is generally determined by considering the following factors: (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party." Id. Some courts have emphasized that the key factors are undue delay and prejudice. Id. at 798-99; Cenlin Taiwan Ltd. v. Centon, Ltd., 5 F.3d 354, 357 (9th Cir.1993).
 
 
 25
 Here, Locken did not attempt to add Dr. Sharma as a defendant until after the district court heard oral argument on the defendants' motions for summary judgment, and more than one and a half years after Locken filed his initial complaint. Locken offered no explanation for this undue delay even though Dr. Sharma provided medical treatment to Locken as early as April 1988. See Texaco, Inc., 939 F.2d at 798-99. In addition, Dr. Sharma would have been prejudiced by this amendment so late in the proceedings. See id. Even under a liberal construction of Locken's motion, the district court did not abuse its discretion in denying Locken's motion for leave to amend. See id.
 
 
 26
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 It is unclear whether the district court had jurisdiction to rule on the Rule 60(b) motion after the notice of appeal had been filed. See 1982 Sanger 24' Spectra Boat, 738 F.2d at 1045 n. 1. However, the resolution of this question is unnecessary because Locken has not appealed the district court's denial of his motion for reconsideration
 
 
 [2]
 Robert Moorehouse was never served and Locken has not challenged his dismissal on appeal. In addition, although Locken did not name Pierce County in his original complaint, Pierce County appeared as a defendant in this action by filing an answer on September 5, 1991
 
 
 [3]
 Locken was a pretrial detainee rather than a convicted prisoner at the time the alleged constitutional violation occurred. A pretrial detainee's Sec. 1983 action for inadequate medical treatment arises from the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment prohibition against cruel and unusual punishment. Jones v. Johnson, 781 F.2d 769, 771 (9th Cir.1986). The Eighth Amendment guarantees, however, provide a minimum standard of care for determining a pretrial detainee's rights to medical care. Id